IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHELLE HINTON, | ) | CASE NO. 1:17 CV 1325 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

Before me[1] is an action by Michelle Carol Hinton under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 6.

[6] ECF # 13.

have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be reversed and remanded as it is unsupported by substantial evidence.

## Facts

**A.    Background facts and decision of the Administrative Law Judge ("ALJ")**

Hinton, who was 50 years old at the time of the administrative hearing,[11] did not graduate high school and has a ninth grade education.[12] Her past relevant employment history includes work as a customer service representative, collection clerk, call center supervisor, and bar tender.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Hinton had the following severe impairments: degenerative disc disease of the lumbar spine with history of disc displacement; degenerative disc disease of the cervical spine with radiculopathy to bilateral upper extremities; obesity; chronic obstructive pulmonary disease

---

[7] ECF # 17 (Commissioner's brief); ECF # 15 (Hinton's brief).

[8] ECF # 17, Attachment 1 (Commissioner's charts); ECF # 16 at 3 (Hinton's charts).

[9] ECF # 16 at 1 (Hinton's fact sheet).

[10] ECF # 20.

[11] ECF # 16 at 1.

[12] ECF # 12, Transcript ("Tr.") at 45.

[13] *Id*. at 22.

(COPD); asthma; bilateral carpal tunnel syndrome; and history of excision of right wrist ganglion cyst, recurring twice.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Hinton's residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the following range of sedentary work as defined in 20 CFR 404.1567(a). The claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. The claimant can sit for six hours of an eight-hour workday, and can stand and/or walk for four hours per eight-hour workday. The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, and crouch. The claimant cannot climb ladders, ropes, or scaffolds; nor can she crawl. The claimant must avoid hazards such as unprotected heights and moving mechanical machinery. The claimant cannot perform commercial driving. The claimant can operate foot controls on a frequent basis. The claimant can operate hand controls on a frequent basis. The claimant can perform frequent handling, fingering, and feeling. The claimant can tolerate frequent exposure to extreme cold, extreme heat, humidity, wetness, odors, dusts, fumes, and pulmonary irritants. The claimant can tolerate occasional exposure to slippery, uneven, or vibrating surfaces.[15]

Given that residual functional capacity, the ALJ found Hinton capable of her past relevant work as customer service representative, collection clerk, and call center supervisor and, therefore, not under a disability.[16]

---

[14] *Id*. at 14.

[15] *Id.* at 17.

[16] *Id.* at 22-23.

**B.	Issues on judicial review**

Hinton asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hinton presents the following issues for judicial review:

- Whether the ALJ improperly weighed and evaluated the opinion evidence of record, including the opinion of plaintiff's treating physician.

- Whether the ALJ ignored substantial evidence and failed to fully evaluate the medical record involving all of the plaintiff's impairments which supported further Residual Functional Capacity ("RFC") restrictions.[17]

For the reasons that follow, I will conclude that the ALJ's finding of no disability lacks substantial evidence and, therefore, must be reversed and remanded for further administrative proceedings.

## Analysis

**A.	Standards of review**

*1.	Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the

---

[17] ECF # 15 at 3.

meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[18]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[19] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[20]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

---

[18] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[19] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[20] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[21]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[22]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[23] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[24]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[25] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[26] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[27] In deciding if such

---

[21] 20 C.F.R. § 404.1527(c)(2).

[22] *Id.*

[23] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[24] *Id.*

[25] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003) (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003)).

[26] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[27] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[28]

In *Wilson v. Commissioner of Social Security*,[29] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[30] The court noted that the regulation expressly contains a "good reasons" requirement.[31] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(c)(2) to determine the weight that should be given to the treating source's opinion.[32]

---

[28] *Id.* at 535.

[29] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[30] *Id.* at 544.

[31] *Id.* (citing and quoting 20 C.F.R. § 404.1527(d)(2)). This provision is now found at 20 C.F.R. § 404.1527(c)(2). *See* SOCIAL SECURITY ADMINISTRATION, HOW WE COLLECT AND CONSIDER EVIDENCE OF DISABILITY, 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012).

[32] *Id.* at 546.

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[33] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[34] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[35] It concluded that the regulatory requirement for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[36]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[37] emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[38] This does not represent a new interpretation of the treating physician rule. Rather, it reinforces and underscores what that court had previously said in

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[38] *Id.* at 375-76.

cases such as *Rogers v. Commissioner of Social Security*,[39] *Blakley v. Commissioner of Social Security*,[40] and *Hensley v. Astrue*.[41]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[42] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[43] These factors are expressly set out in 20 C.F.R. § 404.1527(c)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[44] The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[45]

The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

---

[39] *Rogers*, 486 F.3d at 242.

[40] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[41] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[42] *Gayheart*, 710 F.3d at 376.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[47] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[48] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[49] or that objective medical evidence does not support that opinion.[50] Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in 20 C.F.R. §§ 1527(c)(2)(i)-(ii), (3)-(6).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[51] The Commissioner's *post hoc* arguments on judicial review are immaterial.[52]

---

[47] *Id.*

[48] *Blakley*, 581 F.3d at 406-07.

[49] *Hensley*, 573 F.3d at 266-67.

[50] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[51] *Blakley*, 581 F.3d at 407.

[52] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

**B.     Application of standards**

This case presents two issues:

(1)   The ALJ gave the opinion of Hinton's treating pain management physician minimal weight. The ALJ gave multiple reasons for the weight assigned. Does substantial evidence support those reasons as "good reasons"?

(2)   The ALJ adopted an RFC for sedentary work with exertional, postural, and manipulative limitations that marginally brought Hinton above the capability to do her past relevant work according to the testimony of the vocational expert ("VE"). Does substantial evidence support the various limitations incorporated by the ALJ in the RFC?

The Court will address each of these issues in turn.

*1.     Treating Source*

Treating source Sami Moufawad, M.D., had a long treating relationship with Hinton from 2010 through the date of decision in 2016. His treatment notes demonstrated that he not only interviewed Hinton but performed physical examinations during each office visit.[53] Nevertheless, the ALJ gave Dr. Moufawad's opinion – rendered less than three months before the ALJ's decision – minimal weight.[54]

The ALJ gave several reasons for the weight assigned to Dr. Moufawad's opinion.[55] The primary and most substantial reason was that Dr. Moufawad based his opinion "solely" on Hinton's subjective allegations of pain and that his limitations were not supported by

---

[53] *See, e.g.,* Tr. at 534-35, 574-75, 577-78, 583-85, 721-22, 750-54, 844-56.

[54] *Id.* at 21.

[55] *Id.* at 21-22.

clinical findings.[56] He relied heavily on MRI and EMG test results that show mild to moderate impairments.[57] Although this may be a reasonable assessment of the radiological findings, Dr. Moufawad's examination notes contain extensive physical and clinical findings.[58] Dr. Moufawad's opinion, although done on a standard form with boxes provided, contains substantial narrative.[59] The "subjective complaints only" reason given by the ALJ for discounting Dr. Moufawad's opinion does not appear to be "good."

The ALJ also gave as a good reason the absence of proof that Dr. Moufawad prescribed a cane or walker.[60] Although the record contains no note prescribing the cane or walker, multiple treatment notes reference the use of a cane;[61] in October 2015, Dr. Moufawad noted that Hinton was constantly using a cane.[62] The notes contain multiple references to Hinton's legs becoming weak, causing falls, and giving out, in addition to referencing her unsteady gait.[63]

---

[56] *Id.* at 21.

[57] *Id.* at 18-19.

[58] ECF # 16 at 4-7.

[59] Tr. at 869-72.

[60] *Id.* at 21.

[61] *See, e.g., id.* at 760, 844, 850.

[62] *Id.* at 855-56.

[63] *See, e.g., id.* at 534-35, 574, 721, 760, 844.

The ALJ also discounted Dr. Moufawad's opinion as inconsistent with Hinton's activities of daily living.[64] But, in reading the transcript of Hinton's hearing testimony, it is clear the ALJ made more of Hinton shopping with her grandson (one occasion) and the fact that her bedroom and bathroom are on the second floor than the actual testimony supports.[65] The ALJ also referenced Hinton's testimony about crocheting as evidence that she can finger and handle more than occasionally.[66] But Hinton testified that she now seldom does any crocheting.[67]

The reasons given by the ALJ for assigning minimal weight to Dr. Moufawad's opinion lack substantial evidence and are not "good reasons." Therefore, remand is required.

## 2. RFC

The VE testified that several additional limitations would have rendered Hinton disabled – missing work more than one day a month, being off task more than 10 percent of the work day, or being limited to occasional fine or gross manipulation.[68] The ALJ included none of these additional limitations in the RFC. But such limitations are included in Dr. Moufawad's opinion; he opined that Hinton was capable only of limited or occasional gross and fine manipulation, would be off-task 25 percent or more of the work day, and would be

---

[64] *Id.* at 21-22.

[65] *Id.* at 44, 57-62.

[66] *Id.* at 21.

[67] *Id.* at 71.

[68] *Id.* at 83-84.

absent more than one day a month.[69] As discussed above, the ALJ improperly discounted Dr. Moufawad's opinion – therefore, review of Dr. Moufawad's opinion on remand should include the additional limitations included in his assessment and the impact of those limitations on the RFC and Hinton's ability to do past relevant work.

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Hinton had no disability. Accordingly, the decision of the Commissioner denying Hinton disability insurance benefits is reversed and remanded for proper consideration of treating source Dr. Moufawad's opinion. The ALJ must also reconsider the RFC and the Step Four finding on remand consistent with proper review of the medical opinions in the record.

IT IS SO ORDERED.


Dated: July 31, 2018                          s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

---

[69] *Id.* at 871-72.